BERSCHLER ASSOCIATES, PC
Arnold I. Berschler [SBN 56557]
22 Battery Street, Suite 810
San Francisco, CA 94111
Tel. 415 398 1414

Attorneys for RYAN TUTTLE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| RYAN TUTTLE, | Case No.: 3:21-cv-03019-CRB |
|---|---|
| Plaintiff, | RYAN TUTTLE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS |
| vs. | |
| RICHARDSON'S BAY REGIONAL AGENCY, CURTIS HAVEL, | Date: November 4, 2021<br>Time: 10:00 a.m. |
| Defendants | Judge: Hon. Charles R. Breyer<br>Trial Date: Not Scheduled<br>Action Filed: April 26, 2021 |

Plaintiff Ryan Tuttle respectfully submits the following memorandum of points and authorities in opposition to *Attorney General's Motion to Dismiss*.

//

//

//

RYAN TUTTLE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS

CIVIL No. 3:21-cv-03019-CRB

1

## TABLE OF CONTENTS

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

PLEADED FACTS AND THE MARINE DEBRIS SCHEME . . . . . . . . . . . . . . 4

LEAVE TO AMEND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Cases**

*Calhoun v. United States,* 475 F. Supp. 1 (S.D. Cal. 1977) . . . . . . . . . . . . . . . . . . . . . 9

*Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, (9th Cir. 2011) . . . . . . . . . . 8

*Mathews v. Eldridge,* 424 U.S. 319 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Morrissey v. Brewer*, 408 U.S. 471 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Pearson v. Callahan* (2009) 555 U.S. 223 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Saucier v. Katz* (2001) 533 U.S. 194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sessions v. Dimaya,* 138 S. Ct. 1204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29 . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Salerno*, 481 U.S. 739 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Statutes**

Harb. & Nav. C., §550(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Harb. & Nav. C., §551(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Harb. & Nav., §551(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

| RYAN TUTTLE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS | CIVIL No. 3:21-cv-03019-CRB |
|---|---|

**Other Authorities**

2015 Legis. Bill Hist. CA A.B. 1323 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

RYAN TUTTLE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS

CIVIL No. 3:21-cv-03019-CRB

**SUMMARY OF ARGUMENT**

The *Attorney General's Motion To Dismiss* ("Motion") does not make clear the context in which the Fourth Cause of Action arises, which is that Defendants Richardson's Bay Regional Agency and Curtis Havel, pursuant to California Harbors and Navigation Code [1] *Marine Debris* statutes §§550 and 551, seized and summarily destroyed Plaintiff's vessel. In context, the allegation of deprivation of Due Process is viable upon procedural and substantive due process grounds.

The subject Fourth Cause of Action anticipated that the Defendants, especially Harbor Master Havel, would defend upon the ground that his rights and obligations under the *Marine Debris* Scheme were not "clearly defined." See. *Saucier v. Katz* (2001) 533 U.S. 194, at 201; also see, *Pearson v. Callahan* (2009) 555 U.S. 223, 236.

Attorney General's argument that this action must first be tested upon the other causes of action before reaching the issue of constitutionality is the correct approach.

Plaintiff Tuttle respectfully requests the opportunity to amend his complaint to add issue of unconstitutionality upon vagueness grounds. See, *Sessions v. Dimaya,* 138 S. Ct. 1204, 1216 (2018)["The result is that §16(b) produces, just as ACCA's residual clause did, 'more unpredictability and arbitrariness than the Due Process Clause tolerates [citation omitted]."

**PLEADED FACTS AND THE MARINE DEBRIS SCHEME**

The *Marine Debris* statutory scheme creates two classes of vessels. First, those that do not pose an imminent danger to navigation, the environment. The second class of vessels are

---

[1] "Harb. & Nav." Hereinafter.

RYAN TUTTLE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS

CIVIL No. 3:21-cv-03019-CRB

those that do pose such dangers. The first class of vessels may be seized if they met specific criteria justifying posting a 10-day notice of intent. The second class of vessel has two sub-classes: (a) those posing the sort of immediate danger that the circumstances require immediate removal and demolition forthwith; or (b) those that are dangerous yet "whole" when seized. In instances of vessels seized without notice and that are whole, such are to be stored for ten days to give owners opportunity to retrieve. Under only the second class of vessel may authorities immediately demolish vessels. *Complaint For Damages and for Injunctive Relief*, ¶30; see, Harb. & Nav., §551(b). [ECF 1] [2] RBRA contends that the Tuttle vessel, m/v TRIDENT, was in the first class of vessels. Complaint, §§33, 34, 44.

The statutory scheme is problematical several ways.

**(1)** In neither instance of seized vessels that are stored does the scheme provide a forum or mechanism for review of Defendants' labeling a boat as debris.

The scheme does nothing to require the seizing authority to provide any administrative procedure. In the instance of 10-day notice procedure, the only technically available mechanism would be to apply to a court for a restraining order. This is impossible in practice. Especially so in the context of the composition of the population who are being targeted by RBRA. They are not rich yacht owners. They are poor people. Many are living aboard these anchor-outs. They have no resources to hire lawyers to get emergency injunctions. When RBRA posts these vessels, the results are dangerous confrontations between owners and authorities because owners have no mechanism of review, only self-help. Complaint, ¶¶11, 44. These anchor-out people wind up in the homeless camps, "also becoming subject to ancillary

---

[2] "Complaint" hereinafter.

RYAN TUTTLE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS

CIVIL No. 3:21-cv-03019-CRB

harm, such as exacerbated poor physical health, legally causing even more depression than these 'pandemic times' cause many persons and causing the loss of priceless irreplaceable family memorabilia." Complaint, ¶84.

When Tuttle tried to communicate to Havel, as Havel was seizing TRIDENT, Havel had Tuttle stopped by an attending Belvedere police officer. Complaint, ¶¶44(4), 48.

**(2)** Another problem is that the *Marine Debris* scheme, applicable only to the first class of vessels, is the provision, " . . . the marine debris will be removed and disposed of within 10 days if not claimed, and that the marine debris may be claimed and recovered upon the payment of the public agency's costs" (Harb. & Nav. C., §551(a)(2).) This would seem to mean that the vessel must be stored for ten days after the taking. Yet, Havel/RBRA always destroy the boats immediately, the same day when possible. Complaint, ¶44(3)

**(3)** Another and perhaps the most fundamental problem of all is the scheme's definition of "marine debris":

> "Marine debris" is a vessel or part of a vessel, including a derelict, wreck, hulk, or part of any ship or other watercraft or dilapidated vessel, that is **unseaworthy** and not reasonably fit or capable of being made fit to be used as a means of transportation by water.

Harb. & Nav. C., §550(b); emphasis added. This emphasis is because Havel did not know what "unseaworthy" meant, so he used and continues to use RBRA's own extraordinarily broad definition of what criteria had to be met to qualify a vessel as "seaworthy" (See, Complaint, ¶38):

> Seaworthy: Operational thru hulls, hoses, and sea cocks; bilge pumps are operational and bilges are free of oil; no loose debris or materials on deck; hull, keel, decking, cabin and mast are structurally sound and vessel is free of excessive marine growth,

RYAN TUTTLE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS

CIVIL No. 3:21-cv-03019-CRB

6

> excessive delamination or excessive dry rot that compromises the
> vessel's integrity to stay intact and afloat without extraordinary
> measures; capable of operation to avoid striking vessels, persons,
> or property should it break free from its anchor. [Ord. 19-1]

[ECF 1] Complaint, at pp. 56-57. This definition is a far cry from the scope and purpose of the statutory scheme as shown through its legislative history, which is.

> COMMENT
> 1. Stated need for the bill
>
> According to the author:
>    The purpose of this bill is to allow for an expedited removal process for **derelicts, wrecks, hulks and parts of ships that are no longer truly vessels that litter and pollute our state** waterways, beaches and tide , and submerged land.
>    This proposal draws the distinction between a seaworthy vessel and a vessel or parts of a **vessel that are unseaworthy, i.e., one longer capable of performing its purpose or function, and defines it as marine debris**.

2015 Legis. Bill Hist. CA A.B. 1323; emphasis added.

That Defendants, in their Operation Clean Sweep, use the *Marine Debris* scheme to rid Richardson's Bay of unsightly vessels is an outrageous example deprivation of substantive due process. Complaint, ¶82.

> So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience," *Rochin v. California*, 342 U.S. 165, 172 (1952), or interferes with rights "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325-326 (1937).

*United States v. Salerno*, 481 U.S. 739, 746 (1987). That there is no practical means for these anchor-outs, including Tuttle, to get any sort of constitutionally meaningful review is deprivation procedural due process.

> When government action depriving a person of life, liberty, or property

RYAN TUTTLE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS

CIVIL No. 3:21-cv-03019-CRB

7

> survives substantive due process scrutiny, it must still be implemented in a fair manner. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). This requirement has traditionally been referred to as "procedural" due process.

*Ibid*.

> Whether any procedural protections are due **depends on the extent to which an individual will be "condemned to suffer grievous loss**." *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring), quoted in *Goldberg v. Kelly*, 397 U.S. 254, 263 (1970). The question is not merely the "weight" of the individual's interest, but **whether the nature of the interest is one within the contemplation of the "liberty or property" language of the Fourteenth Amendment**. *Fuentes v. Shevin*, 407 U.S. 67 (1972). Once it is determined that due process applies, the question remains what process is due.

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); emphasis added. Attorney General has not explained what reasonably available due process exists on the primary issue: whether or not the vessel is marine debris? The ultimate thrust of Attorney General's argument is: "Hey, we don't care if your vessel is truly marine debris or not. We gave you enough time to move your garbage, so it's on you."

> **This Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest**. *Wolff v. McDonnell*, 418 U.S. 539, 557-558 (1974). See, e.g., *Phillips v. Commissioner*, 283 U.S. 589, 596-597 (1931). See also Dent v. West Virginia, 129 U.S. 114, 124-125 (1889). The "right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring). The **fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."** *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). See *Grannis v. Ordean*, 234 U.S. 385, 394 (1914).

*Mathews v. Eldridge,* 424 U.S. 319, 333 (1976); emphasis added.

## LEAVE TO AMEND

Typically, the request for leave to amend in the face of a F.R.Civ.P. 12 motion is to be freely given. See, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). Plaintiff Tuttle respectfully requests the opportunity to amend his complaint to add issue of unconstitutionality upon vagueness grounds. See, *Sessions v. Dimaya*, 138 S. Ct. 1204, 1216 (2018).

The Subject Fourth Cause of action anticipated Defendants' affirmative defenses, especially Havel's qualified immunity defense.

> As an alternate pleading, were Defendants to contend that Harb. & Nav. Code, §§550; et seq. do not require a post-seizure holding period, then the statutory scheme deprives Mr. Tuttle of procedural due process in that the statutory scheme denies him the opportunity to a hearing on the issue of whether or not m/v TRIDENT was marine debris.

Complaint, ¶79. See, *Defendant Richardson's Bay Regional Agency and Curtis Havels'* [sic] *Answer to Complaint* [ECF 21] affirmative defenses number 6 (*Id.*, at 10:8-12) and number 11 (*Id.*, at 10:27-11:6) Upon further examination, Tuttle believes that Havel's qualified immunity defense will raise questions of the clarity of the statutory text, thereby opening the issue of vagueness. Havel may argue that he could not reasonably understand the text so as to be deprived of immunity. "Reasonably understand" is a hallmark of an "unconstitutionally vague" issue. See, *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32-33 (1963).

## STANDARDS OF DECISION

The Honorable Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. [Citation omitted]."

RYAN TUTTLE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ATTORNEY GENERAL'S MOTION TO DISMISS

CIVIL No. 3:21-cv-03019-CRB

(*Taylor v. Yee,* 780 F.3d 928, 935. (9th Cir. 2015) The challenged pleading in the Complaint must be assessed as whole, and not disjunctively, losing track of facts incorporated when addressing a specific cause of action. "The court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007).

> [C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. See 5B Wright & Miller§ 1357 (3d ed. 2004 and Supp. 2007). The inquiry, as several Courts of Appeals have recognized, is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard. See, e.g., *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 431 (CA5 2002); *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (CA9 2002).

*Id.*, at 322-323. Attorney General's motion to dismiss action for failure to state claim may be granted only if it appears beyond doubt that Tuttle can prove no set of facts in support of their claim under 42 U.S.C., § 1983 which would entitle them to relief. *Calhoun v. United States,* 475 F. Supp. 1 (S.D. Cal. 1977), affd, 604 F.2d 647 (9th Cir. 1979).

RESPECTFULLY SUBMITTED,

Dated October 8, 2021    BERSCHLER ASSOCIATES, PC

_____
ARNOLD I. BERSCHLER attorney for RYAN TUTTLE